4 F.3d 995
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald G. PERKINS, John P. Dunn and Mark A. Perkins
Defendants-Appellants.
 Nos. 92-1227, 92-1273, 92-1228.
 United States Court of Appeals, Sixth Circuit.
 Sept. 9, 1993.
 
 Before: KEITH and NELSON, Circuit Judges; CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendants-Appellants, Donald G. Perkins, Mark Perkins and John Paul Dunn, appeal their convictions and sentences imposed pursuant to their pleas of guilty to conspiracy to distribute cocaine and marihuana, in violation of 21 U.S.C. Sec. 846. For the reasons stated below, we AFFIRM the judgment of the district court.
 
 I.
 
 2
 On November 28, 1990, Appellants Donald Perkins, Mark Perkins and John Dunn were named with four others in a one count indictment for being members of a conspiracy to possess with intent to distribute cocaine and marihuana. On May 2, 1991, Mark Perkins and John Dunn pled guilty, along with three other co-defendants. Donald Perkins and the remaining co-defendant pled guilty on May 8, 1991, the day their trial was scheduled to begin.
 
 
 3
 Pursuant to their plea agreements, Mark Perkins and John Dunn agreed to cooperate with the government in exchange for the government's promise to seek a downward departure of their sentences. The government made no promises in its plea agreement with Donald Perkins, nor did Perkins agree to cooperate with the government.
 
 
 4
 The Presentence Report for Donald Perkins recommended that he be given a two-level enhancement for possession of a firearm during the commission of the conspiracy and denied a reduction for acceptance of responsibility. Donald Perkins objected to several aspects of his Presentence Report, including the suggested enhancement for possession of a firearm.
 
 
 5
 A sentencing hearing on Donald and Mark Perkins' objections to their Presentence Reports was held on January 10, 1992. At this hearing, the government presented the testimony of Fred Wollard, an unindicted co-conspirator, and Detective Ronald Nightingale of the Michigan State Police. Wollard testified that on various occasions he gave firearms to Donald Perkins as partial payment for drugs. Wollard stated that he informed Mark Perkins of these transactions and that Mark Perkins responded by attempting to discourage him from further trading of firearms. Detective Nightingale testified that 1,278 marihuana plants were seized during the investigation of the conspiracy. Nightingale also testified to admissions by various co-defendants as to the quantity of drugs involved in the conspiracy.
 
 
 6
 Appellant John Dunn entered into a stipulation with the government that the amount of drugs which he knew, or reasonably should have known to be involved in the conspiracy was 392 grams of cocaine and 800 marihuana plants. Based on this stipulation, Dunn's offense level was set at 30.
 
 
 7
 Mark Perkins was sentenced on February 7, 1992. The court found that there were at least 2,080 kilograms of marihuana and slightly more than eight kilograms of cocaine involved in the conspiracy. The court gave Mark Perkins an enhancement for the firearms transactions between Wollard and Donald Perkins and for being a leader of the conspiracy. The court calculated Perkins' sentence at 292-365 months, but gave Perkins a downward departure for his cooperation with the government.
 
 
 8
 Donald Perkins was also sentenced on February 7, 1992. The court determined that his base offense level was 34. The court applied a two-level increase for the firearms trading and a four-level enhancement for his role in the conspiracy. The court also found that Perkins was either a career offender under U.S.S.G. Sec. 4B1.1 or had a Criminal History Category of III--either of which would result in a sentencing range of 360 months to life imprisonment. Before the court formally rendered Perkins' sentence, but after the judge had indicated what he thought to be the appropriate sentencing range, Perkins moved to withdraw his guilty plea. No specific grounds were given in support of the motion to withdraw the guilty plea, although Perkins' counsel stated that he was surprised by the sentencing range. The court denied Perkins' motion and sentenced him to 500 months imprisonment.
 
 
 9
 John Dunn was sentenced on February 19, 1992. The court determined that his offense level was 28, which resulted in a minimum term of 78 months imprisonment. After granting the government's motion for a downward departure, the court sentenced Dunn to 60 months imprisonment.
 
 
 10
 All three Appellants filed timely notices of appeal raising several challenges to their sentences. Each of these challenges are discussed below seriatim.
 
 II.
 
 11
 We first address Donald Perkins' contention that the district court erred in denying his motion to withdraw his guilty plea made at his sentencing hearing on February 7, 1992.
 
 
 12
 Rule 32(d) of the Federal Rules of Criminal Procedure provides that a court may permit the withdrawal of a plea of guilty "upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d). A defendant has no right to withdraw a guilty plea; the ultimate decision rests within the court's discretion. See United States v. Stephens, 906 F.2d 251, 252 (6th Cir.1990). In United States v. Goldberg, 862 F.2d 101 (6th Cir.1988), this Court adopted several standards for courts to consider when deciding whether to allow the withdrawal of a plea. The Goldberg Court listed those standards as follows:
 
 
 13
 (1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to withdraw is granted.
 
 
 14
 862 F.2d at 103-04. The factors stated in Goldberg support the court's denial of Perkins' motion to withdraw his guilty plea.
 
 
 15
 The record reflects that Perkins did not assert a defense to the charge of drug conspiracy nor did he consistently maintain his innocence. In fact, the first notice given to the court that Perkins wanted to withdraw his guilty plea was at his sentencing. Approximately 8 months passed between the time Perkins entered his plea and requested a withdrawal of his plea. Furthermore, Perkins presented no grounds in support of his motion to withdraw his plea. Although there is no evidence of potential prejudice to the Government if Perkins' motion were granted, we believe the other factors sufficiently justify the court's decision. Accordingly, we find no error in the court's refusal to allow Perkins to withdraw his plea.
 
 III.
 
 16
 According to the Presentence Reports for Donald Perkins and Mark Perkins, the conspiracy involved an estimated 21.4 kilograms of cocaine, 121 pounds of processed marihuana and 3,020 marihuana plants. Both Mark and Donald Perkins objected to these estimated drug quantities. Donald Perkins contends that he only distributed 23 ounces of cocaine, no processed marihuana and only 200 marihuana plants. Donald Perkins contends that he should be held accountable for only 4-5 kilograms of cocaine, but made no estimates as to the quantity of marihuana plants and processed marihuana that were involved in the conspiracy.
 
 
 17
 This Court must accept the district court's findings of fact regarding the amount of drugs for which Donald and Mark Perkins should be held accountable, unless the findings are clearly erroneous. United States v. Walton, 908 F.2d 1289 (6th Cir.), cert. denied, 498 U.S. 990 (1990).
 
 
 18
 At a sentencing hearing on January 10, 1992, the government submitted evidence regarding the quantity of drugs involved in the conspiracy. Wollard, the unindicted co-conspirator, informed the court of the amount of drugs that were involved in his drug transactions with Donald and Mark Perkins. Detective Nightingale gave testimony of statements made to him by members of the conspiracy regarding the quantity of drugs they obtained from Donald and Mark Perkins.
 
 
 19
 The Appellants contend that the court's reliance on Wollard's testimony regarding the quantity of drugs is inconsistent with this Court's decision in United States v. Holmes, 961 F.2d 599 (6th Cir.), cert. denied, 113 S.Ct. 232 (1992). In Holmes, we held that a district court "may consider hearsay information contained in a pre-sentence report" if the defendant has "an opportunity to refute the hearsay information" and if the information contains a "sufficient indicia of reliability." 961 F.2d at 603. The Appellants' reliance on Holmes is misplaced because Wollard's statements were not hearsay. Furthermore, Appellants' were given an opportunity to refute Wollard's testimony through cross-examination.
 
 
 20
 The government concedes that the testimony it presented on the quantity of drugs involved in the conspiracy were estimates. The government submits that the evidence from the sentencing hearing revealed that there was between 8.04 and 14.06 kilograms of cocaine, between 67 and 74 kilograms of processed marihuana, and between 2,217 and 2,290 marihuana plants involved in the conspiracy.
 
 
 21
 The court's findings regarding the quantity of drugs was based on the testimony of Wollard and Nightingale and was supported by a preponderance of the evidence. The court erred on the side of caution by accepting the lowest estimate of the quantity of drugs involved in the conspiracy. Donald and Mark Perkins have presented no evidence that the court's findings of fact were clearly erroneous. Accordingly, we find no error in the court's determination of the quantity of drugs involved in the conspiracy.
 
 IV.
 
 22
 Donald and Mark Perkins challenge the court's enhancement of their sentences pursuant to U.S.S.G. Sec. 2D1.1(b)(1), for possession of a firearm during the commission of the conspiracy. Section 2D1.1(b)(1) requires a two point enhancement if a "dangerous weapon (including a firearm) was possessed" during the commission of offenses involving drugs. The Appellants' enhancement was based on Wollard's testimony that on several occasions he gave Donald Perkins weapons in exchange for drugs. We review the court's enhancement of the Appellants' sentences for clear error. See United States v. Hodges, 935 F.2d 766 (6th Cir.), cert. denied, 112 S.Ct. 251 (1991).
 
 
 23
 Both Mark and Donald Perkins argue that Sec. 2D1.1(b)(1) does not apply to the bartering of weapons for drugs. Additionally, Mark Perkins argues that the enhancement was improper with respect to his sentence because the court failed to give adequate notice of its intention to enhance, and because he lacked the reasonable foreseeability of the weapons transactions between Wollard and Donald Perkins.
 
 
 24
 We first address the issue of whether Sec. 2D1.1(b)(1) applies to the bartering transactions between Wollard and Donald Perkins. We note that this Circuit has not ruled on the applicability of Sec. 2D1.1(b)(1) to situations where weapons are merely used as a medium of bartering. Even the district court judge observed that such an enhancement was "novel." In determining whether Sec. 2D1.1(b)(1) contemplates an enhancement under these circumstances we are guided by the Supreme Court's recent decision in Smith v. United States, 1993 U.S.LEXIS 3740, 61 U.S.L.W. 4503 (U.S. June 1, 1993), addressing 18 U.S.C. Sec. 924(c)(1).
 
 
 25
 Section 924(c)(1) imposes an enhanced sentence for a defendant who "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." In Smith, the Court specifically held that bartering firearms for drugs constitutes "use" of a firearm within the meaning 18 U.S.C. Sec. 924(c)(1):
 
 
 26
 When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.... Surely petitioner's treatment of his MAC-10 can be described as "use" within the every day meaning of that term. Petitioner "used" his MAC-10 in an attempt to obtain drugs by offering to trade it for cocaine. Webster's defines "to use" as "to convert to one's service" or "to employ." ... Petitioner's handling of the MAC-10 in this case falls squarely within those definitions. By attempting to trade his MAC-10 for the drugs, he "used" or "employed" it as an item of barter to obtain cocaine; he "derived service" from it because it was going to bring him the very drugs he sought.
 
 
 27
 Id. at * 11-12.
 
 
 28
 We find that the Supreme Court's rationale in Smith is equally applicable to the situation in the instant case. Section 2D1.1(b)(1) provides for a 2 level enhancement where the defendant has been convicted of a drug offense and "a dangerous weapon (including a firearm) was possessed." The commentary to this provision states that an "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1(b)(1), Commentary, Application Note 3. As an example of what is contemplated by this provision, the commentary states that "the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Id. We rule that Section 2D1.1(b)(1)'s requirement of "possession" of a dangerous weapon is satisfied where weapons are traded in exchange for drugs.
 
 
 29
 Mark Perkins asserts that a remand of his sentence is necessary because the court erred by failing to give adequate notice of its intent to apply Section 2D1.1(b)(1), relying on Burns v. United States, 111 S.Ct. 2182 (1991), as support. We reject this argument because the Burns rule regarding adequate notice pertains to upward departures, whereas the application of Section 2D1.1(b)(1) is not a departure under the Guidelines.
 
 
 30
 We also reject Mark Perkins' argument that his sentence should not have been enhanced pursuant to Section 2D1.1(b)(1) because he lacked foreseeability of the weapons transactions between Wollard and Donald Perkins. The evidence shows that Mark Perkins was specifically told of these transactions. In United States v. Williams, 894 F.2d 208 (6th Cir.1990), this Court held that a defendant could be convicted of conspiracy where "the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy was known to defendant or was reasonably foreseeable." Id. at 211-212. (Emphasis added).
 
 
 31
 We find no error in the district court's enhancement of Donald and Mark Perkins' sentence pursuant to Section 2D1.1(b)(1).
 
 V.
 
 32
 Appellant Dunn argues that the court erred in calculating his guideline range by applying an improper conversion ratio for marihuana plants. Dunn claims that the equivalency ratio used by the court did not become effective until November 1, 1990, after the termination of the conspiracy. He also alleges that the equivalency ratio used by the court for the marihuana plants violates his due process rights under the Fifth Amendment to the United States Constitution. We disagree.
 
 
 33
 On January 31, 1992, Dunn entered into a stipulation with the government that the total amount of drugs that he should be held accountable for was 800 marihuana plants and 392 grams of cocaine. The court accepted this stipulation and sentenced Dunn based on the following equivalencies: 1 marihuana plant = 1 kilogram of marihuana = 1 gram of heroin; and 1 gram of cocaine = .2 grams of heroin.
 
 
 34
 Effective November 1, 1989, the equivalency between marihuana plants and marihuana, as stated in U.S.S.G. Sec. 2D1.1(c)(n*), provides as follows:
 
 
 35
 In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana.
 
 
 36
 In the instant case, the district court held Dunn accountable for 800 marihuana plants and used the above formula in calculating the equivalency between marihuana plants and marihuana. We find no error in this calculation.
 
 
 37
 In United States v. Holmes, 961 F.2d 599, 601-602 (6th Cir.1992), this Court held that Sec. 2D1.1's equivalency formulas for marihuana plants does not violate due process. Therefore, we also reject Dunn's due process challenge.
 
 VI.
 
 38
 Finally, we address Dunn's argument that the court erred by not giving him a downward departure so that his sentence would be uniform with his co-defendants' sentences.
 
 
 39
 In United States v. Rutana, 932 F.2d 1155 (6th Cir.1991), this Court held that "departure in order to achieve conformity among co-defendants is not appropriate where there is a basis for disparity." Id. at 1159. In the instant case, the record reflects that the district court sentenced the defendants based on the amount of drugs for which they were individually responsible. Accordingly, we find no error in the disparity between Dunn's sentence and that of his co-defendants.
 
 VII.
 
 40
 For the reasons stated above, we AFFIRM the judgment of the Honorable Robert C. Cleland, United States District Judge for the Eastern District of Michigan.