**UNITED STATES of America,
Plaintiff–Appellant,**

**v.**

**Jack A. HARPST, Defendant–Appellee.**

**No. 91–3078.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 5, 1991.

Decided Nov. 21, 1991.

Rehearing Denied Dec. 18, 1991.

David O. Bauer, Asst. U.S. Atty., Office of the U.S. Atty., Toledo, Ohio, Sean Connelly (argued and briefed), U.S. Dept. of Justice, Criminal Div., Washington, D.C., for plaintiff-appellant.

Charles Boyk, Toledo, Ohio, Walter R. Wagner (argued and briefed), Sandusky, Ohio, for defendant-appellee.

Before JONES and SUHRHEINRICH, Circuit Judges, and TODD, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

The United States appeals the sentencing court's downward departure from the United States Sentencing Guidelines ("U.S.S.G.") on the grounds of defendant's age, health, suicidal tendencies, and ability to make restitution. For the following reasons, we reverse.

## I

On August 7, 1990, defendant-appellee Jack Harpst, a former Vice President of Consumer Loans at The Citizens Banking Company ("Bank") in Sandusky, Ohio, pled guilty to a one-count information charging him with embezzlement of $42,128.67 from the Bank in the period from May 1987 through November 1989. At sentencing, the district court calculated Harpst's total offense level at 13.[1] Given Harpst's placement in Criminal History Category I as a first-time offender, the offense yielded a

guideline range of 12–18 months imprisonment. This range corresponded with the recommendation of the presentence report.

In weighing the circumstances surrounding Harpst's plea, the court noted its reliance on a "very extensive and elaborate presentence report." 1 J.A. at 24. The report stated that, according to his wife, Harpst authored a suicide note on the date on which his embezzlement first became known, and in addition had purchased a rubber hose and inquired of the whereabouts of his gun, both presumably in furtherance of his intent to commit suicide. Harpst also consulted psychologist Dr. Robert Daniels, who concluded that Harpst's prognosis for dealing with his initial self-destructive tendencies was "good." Ms. Harpst similarly indicated that she believed her husband's suicidal tendencies had abated in the weeks following the charge. The presentence report also referred to Harpst's heart attack of November 1, 1987, and to continuing minor heart problems. Since May 14, 1990, Harpst has been employed, earning approximately $20,000 per year. In light of these factors, the presentence report found "no aggravating or mitigating factors which could underpin a departure from the guideline range of imprisonment." 2 J.A. at 14.

The district court imposed a sentence of five years probation, the initial six months to be served under home detention with only work and medical release privileges. The court justified its downward departure on two grounds. First, the court found Harpst's mental and emotional condition to be "far beyond the limits that the Court ordinarily encounters in matters of criminal sentencing," specifically noting its fear that incarceration "might well end in his suicide." 1 J.A. at 26. Second, the court observed that a prison sentence would likely frustrate any meaningful hopes of Harpst making restitution to the Bank, par-

---

* The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation.

1. The court began with a base offense level of 4, U.S.S.G. § 2B1.1(a), increasing it 7 levels because the loss exceeded $40,000.00, id. § 2B1.1(b)(1)(H), and adding 4 additional levels

due to the more than minimal planning involved in the offense, id. § 2B1.1(b)(5), and Harpst's abuse of a position of trust, id. § 3B1.3. The court also awarded Harpst a 2-level decrease for his acceptance of responsibility. Id. § 3E1.1. Harpst does not appeal these determinations.

ticularly as Harpst's age, combined with a prison record, might thwart his future attempts to secure employment.

The government filed a timely motion for reconsideration on November 2, 1990. The district court denied the motion on the ground that, under 18 U.S.C. § 3742, a district court has no authority to alter a defendant's sentence once a final sentence has been imposed. This timely appeal followed.[2]

## II

■■■ This circuit reviews downward departures from the federal sentencing guidelines under a three-part test. First, we determine whether the case is sufficiently unusual to warrant departure, a question of law which is reviewed *de novo*. Second, we examine whether the circumstances, if legally sufficient, actually exist in the case at bar, and accept the conclusions of the sentencing court unless clearly erroneous. Third, the direction and degree of departure must be reasonable. *See United States v. Rutana*, 932 F.2d 1155, 1158 (6th Cir.1991).

As stated above, the presentence report calculated Harpst's offense level at 13, a recommendation in which the sentencing judge concurred. The relevant provisions of the sentencing guidelines mandate that sentences for offenders falling within this range include some minimum term of imprisonment. Section 5C1.1(f) provides that "[i]f the minimum term of imprisonment in the applicable guideline range in the Sentencing Table is more than ten months, the guidelines require that the minimum term be satisfied by a sentence of imprisonment." *See also* U.S.S.G. § 5C1.1 comment. (n. 8) (Nov. 1990) (excluding use of incarceration alternatives—such as intermittent confinement, community confinement, and home detention—for such offenders). The imposition of a term of imprisonment in this case finds further sup-

port in the Sentencing Commission's stated concern that "[u]nder pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as ... embezzlement, that in the Commission's view are 'serious.'" U.S.S.G. Ch. 1, Pt. A.4(d); *see also United States v. Brewer*, 899 F.2d 503, 508 (6th Cir.) ("The guidelines provide ... that white collar criminals, who frequently have no previous record, are to be treated no differently than other criminals committing comparable economic offenses."), *cert. denied*, —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).

This court has consistently afforded "considerable deference" to sentencing judges, in recognition of the difficulty of "fitting flesh and blood defendants within a theoretical framework that attempts to quantify ... a myriad of subjective characteristics objectively." *United States v. Nelson*, 918 F.2d 1268, 1273 (6th Cir.1990). Still, this deference is exercised against a backdrop of guidelines which "substantially circumscribe the discretion which sentencing courts formerly exercised." *United States v. Allen*, 873 F.2d 963, 966 (6th Cir.1989).

■■■ Departures from the base levels imposed by the guidelines are justified only where expressly permitted by the guidelines. *See Brewer*, 899 F.2d at 511 ("a sentencing court should not treat as unique or unusual factors, those circumstances that the guidelines have already taken into account or expressly deemed irrelevant"); *see also United States v. Todd*, 920 F.2d 399, 408 (6th Cir.1990) ("A court can consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission in determining whether the Sentencing Commission adequately took a particular factor into account.").[3] Furthermore, the sentencing

---

2. This court has jurisdiction over the present appeal pursuant to 18 U.S.C. § 3742(b). *See United States v. Smith*, 910 F.2d 326, 328 (6th Cir.1990).

3. Not all circuits have followed this rule to the letter. *See, e.g., United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir.1990) (upholding downward departure on basis of previous employment despite guidelines provision that previous employ-

court must specifically state the reasons for any departure. *United States v. Fitzwater*, 896 F.2d 1009, 1011 (6th Cir.1990); *see also Todd*, 920 F.2d at 408–09 (requirement met if court provides written statement or reasoned statement from the bench). The sentencing judge should also consider the "full panoply" of surrounding circumstances in making her determination. *Rutana*, 932 F.2d at 1159.

With these general principles in mind, we turn to the reasons offered by the sentencing court for its downward departure.

## A. Ability to make restitution

■ The court based the downward departure in part on its concern that incarceration might leave Harpst unemployed, and very likely unemployable, in the future. We believe that our holding in *Rutana* is dispositive. In *Rutana*, a district court departed downward to a probationary sentence on the ground that defendant's incarceration might result in the loss of his employees' jobs. In reversing the sentence, this court found this fact legally insufficient to warrant the departure, concluding that "[e]conomic considerations ... do not provide a basis for downward departure." *Rutana*, 932 F.2d at 1159; *see also United States v. Bolden*, 889 F.2d 1336, 1340 (4th Cir.1989) ("we do not think that the economic desirability of attempting to preserve [defendant's] job so as to enable him to make restitution warrants a downward adjustment from the guidelines"). Furthermore, it seems that the Sentencing Commission considered including the ability to make restitution as a possible mitigating circumstance, yet rejected it as a basis for departure from the guidelines. *See* U.S.S.G. § 5H1.10, p.s. (socio-economic status not relevant in determination of sentence). Thus, a rule permitting greater leniency in sentencing in those cases in which restitution is at issue *and* is a meaningful possibility (i.e., generally white-collar crimes) would, we believe, nurture the unfortunate practice of disparate sentencing based on socio-economic status, which the guidelines were intended to supplant.

ment not "ordinarily relevant" to such determi-

In light of clear precedent and statutory language, we find that Harpst's ability to make restitution was a legally improper ground upon which to rest a downward departure from his base offense level.

## B. Mental and emotional condition

■ Harpst appears to have contemplated suicide in the initial days following the charges made against him, but since that time, according to his wife and an examining psychologist, has resolved his self-destructive tendencies. The sentencing guidelines provide that the mental and emotional condition of the defendant are not "ordinarily relevant," although such condition may be relevant "in determining the length and conditions of probation or supervised release." U.S.S.G. § 5H1.3, p.s.

The issue remains whether suicidal tendencies present a legally proper ground upon which to base a downward departure from the guidelines. Although apparently an issue of first impression in our jurisdiction, the First Circuit recently held that a downward departure from incarceration to probation for mental and emotional reasons is justified only where "the defendant has an exceptional need for, or ability to respond to treatment," and "the Bureau of Prisons does not have adequate treatment services." *United States v. Studley*, 907 F.2d 254, 259 (1st Cir.1990). In this case, the Bureau of Prisons is legally charged with providing adequate facilities and programs for suicidal inmates. *See* 28 C.F.R. § 552.41 (1991).

After careful consideration, we find a rule permitting departures on the basis of defendants' avowed self-destructive tendencies ill-advised. A holding by this court embracing downward departures due to suicidal tendencies would, we fear, result in such claims becoming virtual boilerplate in defendants' arguments before sentencing judges. Having to separate the wheat of valid claims from the chaff of disingenuous ones is a path before which we give serious pause. Harpst's claim before this court is particularly weak, given that his wife indicated that his suicidal tendency had abated

nation).

since its initial appearance, and that Dr. Daniels regarded Harpst's prognosis for dealing with his self-destructive tendencies as "good." In addition, as the government correctly notes, Harpst appears never to have claimed that he might be induced to take his life if incarcerated and indicated to the sentencing judge that he was prepared to "take what you have made a decision to do." 1 J.A. at 24. On the basis of these considerations, we conclude that the district court improperly departed downward from Harpst's sentence on the basis of his suicidal tendency.

#### C. Age and physical infirmity

■ At the time of sentencing, Harpst was 54 years old, and the record indicates a history of heart trouble. Although the guidelines note that both age[4] and physical condition[5] may be valid grounds for a downward departure, the district court did not rely on these factors in justifying its departure, thus contravening this court's clear mandate that departures be explicitly justified.[6] This court has consistently required that the district court articulate reasons for any departure. *See Todd*, 920 F.2d at 409 (judge's unadorned reference to "unusual circumstances" insufficient to justify departure). We therefore believe that it would be improper for us to rely on these grounds in upholding the downward departure.

### III

For the foregoing reasons, we REVERSE the sentence imposed by the district court and REMAND FOR RESENTENCING consistent with this opinion.

---

4. U.S.S.G. § 5H1.1, p.s. provides, in relevant part that, although not "ordinarily relevant ... [a]ge may be a reason to go below the guidelines when the offender is elderly *and* infirm and where a form of punishment (*e.g.,* home confinement) might be equally efficient as and less costly than incarceration."

5. U.S.S.G. § 5H1.4, p.s. provides in part that, although "[p]hysical condition is not ordinarily relevant" to a departure, "extraordinary physical

---

impairment may be a reason to impose a sentence other than imprisonment."

6. Although the district court did refer at sentencing to Harpst's age, it did so only with reference to Harpst's future employability (i.e., in the context of restitution). The court did not imply that it considered Harpst too old or infirm to withstand prison life. The court did not mention Harpst's physical condition.