**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Miriam AGUIRRE, Defendant– Appellee.**

No. 99–50135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2000

Filed June 19, 2000

**1123**

Ronald L. Cheng, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellant.

Timothy C. Lannen, Los Angeles, California for the defendant-appellee.

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by

Before: HUG, Chief Judge, FERGUSON, Circuit Judge and RESTANI, Judge, United States Court of International Trade.*

Opinion by Judge RESTANI; Concurrence by Judge FERGUSON.

RESTANI, Judge:

The district court sentenced Miriam Aguirre ("Aguirre" or "defendant") to 57 months imprisonment for her participation in brokering a drug deal. The government appeals a two level downward departure in defendant's sentence granted due to the absence of a local woman's prison. The government argues that Fed.R.Crim.P. 35(c) barred the district court from altering the sentence after the oral imposition of sentence, making the two level downward departure error. We agree. We find that Rule 35(c) applies from the time of oral imposition of sentence, and that its limitations on altering the sentence therefore applied at the time the district court granted the two level departure. The government also appeals a four level departure granted on the basis of extraordinary family circumstances. We conclude that this departure was within the district court's discretion. We vacate the sentence and remand for reinstatement of the original sentence.

## I. Background

In 1996, Aguirre participated in a drug transaction involving a trade of methamphetamine for cocaine. On January 31, 1997, Aguirre was indicted on two counts for conspiring with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and for intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Defendant pled guilty to count one on May 1, 1997.

The September 1997 pre-sentence report recommended a sentencing range of

designation.

135 to 168 months, calculated on a base offense level ("BOL") of 36, in criminal history category I, with a three point downward departure based on acceptance of responsibility, making the BOL 33. Defendant sought several adjustments to her sentence, and the Government acknowledged that Aguirre qualified for a "safety valve" adjustment under U.S.S.G. § 5C1.2. This two level reduction resulted in a sentencing range of 108 to 135 months, calculated on a BOL of 31 combined with criminal history category I.

Aguirre filed a request for a downward departure based on extraordinary family circumstances just prior to the November 23, 1998, sentencing hearing. This request was based on the death of Aguirre's common-law husband during the time of her incarceration, which left her 8 year-old son without a custodial parent. At the hearing, the district court stated it would grant a downward departure of two levels on this basis. Sentencing was continued, however, to allow the government an opportunity to address the separate issue of whether the amount of drugs involved in the transaction had been foreseeable.

Sentencing resumed on January 26, 1999. The district court did not depart downward for lack of foreseeability, but increased the downward departure for extraordinary family circumstances to four levels. This led to a sentencing range of 70 to 87 months (BOL 27), and the judge sentenced defendant to 70 months. After the district court judge stated that the sentencing hearing was concluded, defense counsel requested that the district court recommend local housing for Aguirre in southern California. The judge noted that there may not be a facility for women in southern California, but recommended that Aguirre be designated within California, and within southern California if possible,

in order to allow Aguirre to be near her son.

Two days later, on January 28, 1999, the judge reopened sentencing *sua sponte*. The judge determined that an additional downward departure of two points was warranted on the ground that the absence of a local women's prison facility would make family visitation difficult. The government opposed reopening the sentence, stating the court did not have jurisdiction to do so pursuant to Fed.R.Crim.P. 35(c). The judge stated that the court had jurisdiction, because the sentence involved "clear error" or "technical error." The additional two level downward departure led to a sentencing range of 57 to 71 months (BOL 25), and the judge sentenced Aguirre to 57 months. The government appealed.[1]

## II. Application of Fed.R.Crim.P. 35(c)

■ We consider *de novo* whether the district court had jurisdiction to resentence. *United States v. Barragan–Mendoza*, 174 F.3d 1024, 1027 (9th Cir.1999). While district courts generally have "inherent authority" to decide motions for reconsideration and rehearing of orders in criminal proceedings, 18 U.S.C. § 3582 (1994) expressly limits the court's authority in sentencing. *Id.* at 1028. Section 3582 provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that ... (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]

18 U.S.C. § 3582(c)(1) (1994). "Rule 35(c) provides the only plausible avenue by which the district court could properly correct or modify [the] original sentence."

---

1. At the time of oral argument, written judgment had yet to enter in this case. The district court subsequently entered written judgment on April 11, 2000. The appeal is now timely, as it is deemed filed on the date judgment is entered. *See* Fed. R.App. P. 4(b)(2)

("A notice of appeal filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.").

*Barragan–Mendoza,* ·174 F.3d at 1028 (quoting *United States v. Soto–Holguin,* 163 F.3d 1217, 1220 (10th Cir.1999)); *see also United States v. Handa,* 122 F.3d 690, 691 (9th Cir.1997) ("A district court does not have inherent power to resentence defendants at any time. Its authority to do so must flow either from the court of appeals mandate under 28 U.S.C. § 2106 (1982) or from Federal Rule of Criminal Procedure 35.") (citations omitted).

Rule 35(c) of the Federal Rules of Criminal Procedure states: "The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." The rule does not clarify whether "imposition of sentence" refers to the time of oral pronouncement of the sentence, or the entry of written judgment. Aguirre contests the application of Rule 35(c), arguing that the sentence was not imposed on January 26, 1999, because the district court had not entered judgment, and argues that the oral pronouncement of the sentence did not constitute an "imposition of sentence."

A majority of circuits considering the question have interpreted "imposition of sentence" in Rule 35(c) as referring to the time of the oral pronouncement of the sentence. *See United States v. Morrison,* 204 F.3d 1091, 1093–94 (11th Cir.2000); *United States v. Gonzalez,* 163 F.3d 255, 263–64 (5th Cir.1998), *reh'g denied,* 1999 U.S.App. Lexis 1720 (1999); *United States v. Layman,* 116 F.3d 105, 108–09 (4th Cir. 1997), *cert. denied,* 522 U.S. 1107, 118 S.Ct. 1034, 140 L.Ed.2d 101 (1998); *United States v. Abreu–Cabrera,* 64 F.3d 67, 73–74 (2d Cir.1995); *United States v. Townsend,* 33 F.3d 1230, 1231 (10th Cir.1994); *but see United States v. Clay,* 37 F.3d 338, 340 (7th Cir.1994) (" 'imposition of the sentence' . . . signifies the date judgment enters rather than the date sentence is orally pronounced"); *United States v. Morillo,* 8 F.3d 864, 869 n. 8 (1st Cir.1993) (dicta).

We have previously suggested that the phrase "imposition of sentence" is a "term of art that generally refers to the time at which a sentence is orally pronounced." *United States v. Navarro–Espinosa,* 30 F.3d 1169, 1170 (9th Cir.1994) (citations omitted). We also noted, however, that the Advisory Committee's notes accompanying Rule 35(c) "indicate that the drafters intended that sentencing courts be empowered to correct clearly erroneous sentences within 7 days of the formal entry of judgment." *Id.* at 1170–71. This reading is based on the Advisory Committee's statement that the time for correcting errors should be "narrowed within the time for appealing the sentence to reduce the likelihood of jurisdictional questions in the event of an appeal," and on the fact that the time to appeal runs from the formal entry of judgment. *Id.* at 1171; *see also* Fed. R.App. P. 4(b). In our previous cases, it was not necessary to decide which interpretation of Rule 35(c) was correct. *See Navarro–Espinosa,* 30 F.3d at 1171 ("We need not resolve the Rule 35 issue in this case."). We address the issue here.

We find that sentence is imposed at the time it is orally pronounced. This interpretation is consistent with the requirement under the Sixth Amendment and Rule 43(a) of the Federal Rules of Criminal Procedure that the defendant shall be physically present at the imposition of sentence. *See* Fed.R.Crim.P. 43(a); *Townsend,* 33 F.3d at 1231. If the imposition of sentence is interpreted as occurring upon the entry of written judgment, the defendant would not be present. This interpretation is also consistent with our decisions holding that if there is a conflict between the sentence orally imposed and written judgment, the oral pronouncement, as correctly reported, controls. *See United States v. Allen,* 157 F.3d 661, 668 (9th Cir.1998); *United States v. Hicks,* 997 F.2d 594, 597 (9th Cir.1993); *United States v. Munoz–Dela Rosa,* 495 F.2d 253, 256 (9th Cir.1974). In this context we have long held that "[t]he only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant." *See Munoz–Dela Rosa,* 495 F.2d at

256. Using the time of the oral pronouncement of the sentence also promotes the goal of finality. *See Abreu–Cabrera,* 64 F.3d at 74 ("A contrary rule, interpreting the phrase to refer to the written judgment, would allow district courts to announce a sentence, delay the ministerial task of formal entry of judgment, have a change of heart, and alter the sentence"); *see also Layman,* 116 F.3d at 108 (if written judgment is imposition of sentence, district courts "could simply delay the ministerial task of filing a judgment, thereby providing the court an indefinite period of time in which to change its mind about the sentence."). At the time of the oral pronouncement of sentence, both the court and counsel are in a position to notice any errors in the sentence. *Abreu–Cabrera,* 64 F.3d at 74. Further, this interpretation does not create the jurisdictional problem discussed by the Advisory Committee. The short seven day period for corrections will run either before or during the period for appeal.

■ Therefore, Rule 35(c)'s limitation on correction of errors applied as of the oral pronouncement of Aguirre's sentence on January 26, 1999. When the district court reopened the sentence two days later, any alterations to the sentence could be made only if there was an arithmetical, technical, or other clear error. The district court believed that it was authorized to act pursuant to Rule 35(c) on the ground that the failure to consider the unavailability of a local women's prison facility amounted to clear error. Rule 35(c), however, "clearly is intended to allow a district court to modify a sentence only in very limited instances and *not* merely to 'reconsider' sentencing issues." *Barragan–Mendoza,* 174 F.3d at 1028 (emphasis in original). Rule 35(c) is intended to permit the district court to correct "ob-

vious" sentencing errors, "but not to reconsider, to change its mind, or to reopen issues previously resolved under the guidelines, where there is no error." *United States v. Portin,* 20 F.3d 1028, 1030 (9th Cir.1994) (per curiam). Rule 35(c) permits corrections of sentences which were clearly erroneous under the Sentencing Guidelines. *See United States v. Colace,* 126 F.3d 1229, 1231 (9th Cir.1997) (imposition of wholly probationary sentence clear error, and correction occurred within seven days); *United States v. Nash,* 115 F.3d 1431, 1441 (9th Cir.1997) (original sentence clearly erroneous because less than Guideline minimum); *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1054, 140 L.Ed.2d 117 (1998).

Here, although the district court made the alleged correction within seven days, the initial sentence did not contain any error. The district court was aware at the time of sentencing on January 26, 1999, of the possibility that southern California lacked a woman's prison facility. Only after imposing sentence, however, did the district court decide that the absence of a local women's prison would present a sufficient hardship to justify a downward departure.[2] The original sentence was not based on the availability of local prison housing. Indeed, the defense did not ask for a departure on this basis, but only for a recommendation as to local housing after the district court had already imposed the sentence. Because there was no "clear error" in the January 26, 1999, sentence, we reverse the two level downward departure made at the subsequent January 28, 1999, hearing.

### III. Extraordinary Family Circumstances

■ The government separately appeals the downward departure based on

---

**2.** Defendant's reliance on *United States v. Waters,* 84 F.3d 86 (2d Cir.1996) (per curiam) is misplaced. *Waters* involved the district court's failure to consider a Sentencing Guidelines' policy statement. The Second Circuit found this was a clear error because consideration of the policy statement was

mandatory, and therefore the sentence could be corrected upon resentencing six days after the initial sentence. 84 F.3d at 89–90. Consideration of the availability of particular housing for a defendant, by contrast, is not required under the Guidelines, nor is the failure to consider this factor clear error.

extraordinary family circumstances. The district court found that the death of Aguirre's common-law husband warranted the departure because it left Aguirre's son without a custodial parent. A district court's decision to depart from the Sentencing Guidelines is reviewed for abuse of discretion. *Koon v. United States*, 518 U.S. 81, 98–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). District courts are to consider the following factors when departing from the Guidelines:

1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual case?

2) Has the Commission forbidden departures based on those features?

3) If not, has the Commission encouraged departures based on those features?

4) If not, has the Commission discouraged departures based on those features?

*Koon*, 518 U.S. at 95, 116 S.Ct. 2035 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)). The district court, however, retains the discretion to determine whether a departure is warranted. *See United States v. Sanchez–Rodriguez*, 161 F.3d 556, 560 (9th Cir.1998) (en banc) ("*Koon* made clear that we cannot categorically forbid a district court from departing downward on any basis except for those specifically proscribed in the Guidelines"). District courts are "particularly suited" in determining whether a factor makes a case unusual, because they are "informed by [their] vantage point and day-to-day experience in criminal sentencing." *Id.* at 561

(quoting *Koon*, 518 U.S. at 98, 116 S.Ct. 2035).

■ The government argues that a departure based on family circumstances is specifically discouraged in the Guidelines. *See* U.S.S.G. § 5H1.6 ("Family ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."). We have held that § 5H1.6 "discourages" a departure based on family ties, and that when a factor is discouraged, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *United States v. Klimavicius–Viloria*, 144 F.3d 1249, 1267 (9th Cir.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 110, 145 L.Ed.2d 94 (1999). The district court stated that it was granting a departure for extraordinary family circumstances "based on the fact that there is an 8 year-old son who's lost a father and would be losing a mother for a substantial period of time." Because district courts are "particularly suited" to determine whether a given factor makes a case unusual, we will not second guess the district court's determination that this case involved an unusual family situation.[3] We conclude that the extraordinary family circumstances departure was not an abuse of discretion, and affirm the four level departure on this basis.

## IV. Conclusion

We find that Rule 35(c) prevented the district court from altering the sentence

---

**3.** The cases relied on by the government do not warrant a different outcome. *See United States v. Miller*, 991 F.2d 552, 553 (9th Cir. 1993) (finding district court's downward departure based on disruption of parental relationship with two small children improper); *United States v. Berlier*, 948 F.2d 1093, 1096 (9th Cir.1991) (reversing downward departure based on family circumstances on ground that defendant showed "nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally dis-

rupts spousal and parental relationships.") (citation omitted). At the time these two cases were decided, we applied a *de novo* standard of review in considering the district court's authority to depart from the Sentencing Guidelines. *See United States v. Lira–Barraza*, 941 F.2d 745, 746 (9th Cir.1991) (en banc). *Koon* reversed this standard of review, holding that a district court's departure from the Guidelines is to be reviewed for abuse of discretion. 518 U.S. at 99–100, 116 S.Ct. 2035.

after the January 26, 1999, hearing, for reasons other than arithmetical, technical, or clear error. Because the downward departure based on the absence of a local women's prison facility did not constitute "clear error," we reverse the two level departure granted on that basis. We affirm the four level departure based on extraordinary family circumstances. We therefore vacate the sentence and remand for the district court to reinstate the original sentence.

VACATED AND REMANDED FOR IMPOSITION OF THE ORIGINAL SENTENCE.

FERGUSON, Circuit Judge, concurring:

I agree that Rule 35(c) does not permit a district court to "change its mind about the appropriateness of [a] sentence" that it already imposed on a defendant. Rule 35(c), Advisory Committee Notes (1991 Amendments). I write separately for the limited purpose of highlighting the narrow focus of our holding. In the proceedings below, the district court granted a two level downward departure based on the fact that it would be extremely difficult for Ms. Aguirre's eight-year-old son to visit her given the absence of a women's prison facility in the surrounding area. The district court further noted that male prisoners and their families do not confront the same hardships because there are numerous men's prisons in the vicinity.

Today, we reverse the two level departure, not because the Sentencing Guidelines preclude it, but rather because the timing and procedures the district court used in granting the departure violated Rule 35(c). We save for another day the issue of whether a district court can grant a downward departure based on the absence of a local women's prison facility.