**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Nathan ALFARO, Defendant–Appellant.**

No. 02–50235.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 2003.

Filed July 14, 2003.

Angela M. Krueger, Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), Roger W. Haines, Jr., Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Before PREGERSON, TASHIMA and CLIFTON, Circuit Judges.

## OPINION

CLIFTON, Circuit Judge.

Robert Nathan Alfaro was sentenced for having illegally imported certain specified chemicals used in manufacturing a controlled substance. The district court applied a 14–level upward departure that was calculated using a sentencing guideline that did not govern Alfaro's offense. Nor, at the time of the offense, did that guideline cover the chemical for which the departure was applied. Alfaro appeals the sentence, contending that the upward departure was unwarranted, was unreasonable in magnitude, and violated the *ex post facto* clause. He also submits that the district court acted improperly by calling and examining witnesses at the sentencing hearing. We vacate the sentence and remand for resentencing.

## I. BACKGROUND

Alfaro was arrested in September 2001 and charged with having "knowingly and intentionally import[ed ] ... approximately 25.8 kilograms of red phosphorous and 100.25 kilograms of crystal iodine, ... knowing, intending, and having reasonable cause to believe that the chemicals would be used to manufacture a controlled substance," in violation of 21 U.S.C. § 843(a)(7). Alfaro pled guilty pursuant to a plea agreement, acknowledging that he had known the chemicals could be used to make methamphetamine and that he had known the importation was illegal.

The probation officer recommended an upward departure pursuant to U.S.S.G. § 2D1.12, cmt. appl. n. 1, on the ground that Alfaro's importation of iodine was "large-scale." To determine the extent of the departure, the probation officer recommended analogizing to U.S.S.G. § 2D1.11, which governed sentences for offenses involving certain listed chemicals.[1] Iodine was not one of the chemicals listed in the 2000 version of § 2D1.11, but hydriodic acid was. The probation officer therefore recommended converting the amount of iodine that Alfaro had been convicted of importing into an appropriate amount of hydriodic acid for the purpose of applying § 2D1.11.

At the court's request, a DEA chemist testified at sentencing about the manufacture of methamphetamine.[2] He was examined by the court and cross examined by Alfaro's counsel. He explained that ephedrine and pseudoephedrine are "precursor" chemicals that are incorporated into methamphetamine. Hydriodic acid is used as a reagent to convert the precursor chemicals into methamphetamine, although other reagents may be used instead. The chemist testified that one kilogram of iodine, when reacted with red phosphorus and water, produces 1.7 kilograms of hydriodic acid, so that 100.25 kilograms of iodine could produce approximately 170 kilograms of hydriodic acid.

The district court calculated Alfaro's sentence as follows:

- Per § 1B1.2 and Appendix A of either the 2000 or 2001 Sentencing Guide-

---

1. Section 2D1.11 (2000 & 2001) was labeled as governing sentencing for "Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy." Section 2D1.12 (2000) was labeled as governing sentencing for "Unlawful Possession, Manufacture, Distribution, or Importation of Prohibited Flask or Equipment; Attempt or Conspiracy." Section 2D1.12 (2001) was la-

beled as governing sentencing for "Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy."

2. The case agent for the Customs Service and the probation officer also testified at the court's request.

lines, the court determined that § 2D1.12 was the governing guideline for the crime Alfaro had pled guilty to.

- Per § 2D1.12(a)(1) of either the 2000 or 2001 Guidelines, the base offense level was 12 because Alfaro knew or believed the prohibited chemicals were to be used to manufacture a controlled substance.
- Per § 2D1.12(b)(1) of either the 2000 or 2001 Guidelines, the base level was increased by 2, to 14, because Alfaro knew or had cause to believe the prohibited chemicals were to be used to manufacture methamphetamine.
- Per Application Note 1 of § 2D1.12 under either the 2000 or 2001 Guidelines, an upward departure was appropriate because the offense involved a "large-scale" importation of iodine. The court found that Alfaro had imported 110.25 kilograms of iodine,[3] which could yield approximately 25 kilograms of methamphetamine.[4]
- To determine the extent of the upward departure, the court used as a guide § 2D1.11 of the 2001 Guidelines, which governed sentencing for having unlawfully distributed, imported, exported, or possessed a listed chemical. Under § 2D1.11 (2001), the base level for importing 376.2 grams or more of iodine, a List II chemical, was 28. Accordingly, the court set Alfaro's upward departure for "large-scale" importation at 14 levels, which, when added to the base offense level of 14, resulted in a level of 28, or the equivalent of the base level that Alfaro would have received had he been sentenced under § 2D1.11 (2001).
- The court rejected Alfaro's argument that reliance on § 2D1.11 (2001) violated the *ex post facto* clause because iodine was not specifically mentioned in the 2000 version of § 2D1.11. The court noted that, even though iodine was not specifically mentioned in § 2D1.11 (2000), it was a

- List II chemical statutorily. Thus, under the 2000 Guidelines, the court simply would have converted the amount of iodine into the equivalent amount of hydriodic acid to calculate the base offense level under § 2D1.11 (2000) for purposes of determining the magnitude of the upward adjustment. Additionally, the court noted that, under this procedure for calculating the upward adjustment, Alfaro actually received a lesser departure under the 2001 Guidelines (14 levels) than he would have under the 2000 Guidelines (16 levels), eliminating any *ex post facto* problem.

The court applied downward adjustments of two levels for minor role and one level for fast track. Alfaro's total offense level was 23, and, based on his criminal history category of III, his guideline range was 57–71 months. The court sentenced Alfaro to 57 months of imprisonment followed by 3 years of supervised release.

Alfaro timely appealed.

## II. DISCUSSION

A. The Extent of the Upward Departure for "Large–Scale" Importation Was Unreasonable and Violated the *Ex Post Facto* Clause.

1. Standard of Review.

Alfaro submits that the district court erred in applying the enhancement for a

---

**3.** It is unclear how the court arrived at 110.25 kilograms. The information alleged that Alfaro had imported 100.25 kilograms.

**4.** The court also found that Alfaro had imported 25.8 kilograms of red phosphorus, which could yield approximately 51.6 kilograms of methamphetamine.

"large-scale" importation of chemicals on the grounds that (1) his importation was not "large-scale," (2) the extent of the departure was unreasonable, and (3) the calculation of the departure violated the *ex post facto* clause. The standard of review for the first two claims is governed by 18 U.S.C. § 3742(e). There is a potential question as to what version of that statute applies. Section 3742(e) was amended, effective April 30, 2003, by the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub.L. 108–21, § 401, 117 Stat. 650, 670 (2003).[5] The amendments overruled in part the holding of *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In *Koon*, the Supreme Court interpreted the previous version of § 3742(e) to require that appellate courts afford "substantial deference" to a district court's decision to depart from the guidelines. *See* 518 U.S. at 98, 116 S.Ct. 2035. This "substantial deference" meant that a district court's departure decision was reviewed not *de novo*, but for abuse of discretion. *See id.*

at 99, 116 S.Ct. 2035. The amended statute now requires *de novo* review in certain situations while continuing to require that appellate courts "give due deference to the district court's application of the guidelines to the facts" in all other situations. *See* 18 U.S.C. 3742(e) (April 30, 2003).

This case was argued and submitted on April 10, 2003, approximately three weeks before the amendment was enacted and became effective. At that time, it was not anticipated that the statute would be amended, and the parties did not speak to the question of whether the amendment applies to this case in their briefs or at oral argument. We need not and do not resolve that question here, for the amendments make no difference to the outcome of this case. The amendments alter the standard of review for only one issue on this appeal: the district court's decision to depart upward. Under the previous version of § 3742(e), this decision was subject to review for abuse of discretion. *See United States v. Thompson*, 315 F.3d 1071, 1074 (9th Cir.2002)(citing *Koon*, 518 U.S. at 99, 116 S.Ct. 2035; *United States v.*

5. As amended, § 3742(e) reads in its entirety:

    **(e) Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—

    (1) was imposed in violation of law;

    (2) was imposed as a result of an incorrect application of the sentencing guidelines;

    (3) is outside the applicable guideline range, and

    (A) the district court failed to provide the written statement of reasons required by section 3553(c);

    (B) the sentence departs from the applicable guideline range based on a factor that—

    (I) does not advance the objectives set forth in section 3553(a)(2); or

    (ii) is not authorized under section 3553(b); or

    (iii) is not justified by the facts of the case; or

    (C) the sentence departs to an unreasonable degree from the applicable guidelines range, having regard for the factors to be

considered in imposing a sentence, as set forth in section 3553(a) of this title and the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

    (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, except with respect to determinations under subsection (3)(A) or (3)(B), shall give due deference to the district court's application of the guidelines to the facts. With respect to determinations under subsection (3)(A) or (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e) (April 30, 2003).

*Caperna,* 251 F.3d 827, 830 (9th Cir.2001)). Under the amended statute, we would review Alfaro's challenge to the departure decision *de novo* as an argument under subsection (3)(B)(iii) that the departure was "not justified by the facts of the case." *See* 18 U.S.C. § 3742(e) (April 30, 2003). As explained below, we would affirm the district court's decision to apply the enhancement under either standard. We therefore do not decide in this opinion whether the amended standard applies to this case.

As for the magnitude of the enhancement, the standard of review is unchanged by the PROTECT Act. The pre-amendment standard was abuse of discretion. *See United States v. Working,* 287 F.3d 801, 806 (9th Cir.2002)(citing *Koon,* 518 U.S. at 98, 116 S.Ct. 2035). Under the amended statute, Alfaro's challenge to the extent of the departure would constitute an argument under subsection (3)(C) that "the sentence departs to an unreasonable degree from the applicable guidelines range." 18 U.S.C. § 3742(e)(3)(C) (April 30, 2003). The amended statute continues to demand that an appellate court afford "due deference" to determinations made under that subsection. *Compare* 18 U.S.C. § 3742(e) (April 30, 2003) *with* 18 U.S.C. § 3742(e) (2000). This language remains the same as before and reflects, with respect to subsection (3)(C), no intent to overrule *Koon's* holding that "due deference" requires review for abuse of discretion. *See* 518 U.S. at 98–99, 116 S.Ct. 2035. It is therefore unnecessary to decide whether or not the amendments apply. In either case, we review Alfaro's challenge to the magnitude of the departure for abuse of discretion.

We review Alfaro's *ex post facto* challenge *de novo. See United States v. Ortland,* 109 F.3d 539, 543 (9th Cir.1997).

2. The Merits.

Before proceeding further, we must determine which version of the Guidelines governed Alfaro's sentencing. "Generally, a district court applies the Guidelines in effect on the date the defendant is sentenced." *United States v. Garcia–Cruz,* 40 F.3d 986, 987 (9th Cir.1994); *see also* 18 U.S.C. § 3553(a)(4)(A). Alfaro was sentenced on May 6, 2002. We therefore apply the 2001 Sentencing Guidelines unless they would pose an *ex post facto* problem, in which case an earlier version of the Guidelines must be applied. *See Garcia–Cruz,* 40 F.3d at 987.

Alfaro's claim that the enhancement was unjustified because his importation was not "large-scale" is without merit. "The Commission intends the sentencing courts to treat 9473 each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." *Thompson,* 315 F.3d at 1074 (quoting U.S.S.G. Ch. 1, Pt. A, Intro. Comment 4(b) (2002)). Alfaro imported 100.25 kilograms of iodine, more than 266 times [6] the amount (376.2 grams) required to impose the highest base level for iodine (28) under § 2D1.11 (2001).[7] That qualifies as "large-scale" under either a *de novo* standard or an abuse-of-discretion standard. We therefore affirm the district court's decision to depart.

We agree with Alfaro, however, that the extent of the departure was unreasonable. U.S.S.G. § 1B1.2 (2001) refers courts to the Statutory Index to determine the guideline applicable to the

---

**6.** 100.25 kg / (376.2 g * 1 kg / 1000 g) = 266.5.

**7.** That guideline covers a range from less than 5 grams of iodine to 376.2 grams or more. *See* U.S.S.G. § 2D1.11(e) (2001).

offense of conviction. The Statutory Index lists § 2D1.12 as the sole guideline applicable to 21 U.S.C. § 843(a)(7), the statute Alfaro pled guilty to violating. U.S.S.G.App. A (2001). Thus, Alfaro could not be sentenced directly under § 2D1.11; he could be sentenced under only § 2D1.12. Although the district court began with § 2D1.12, its methodology in calculating the upward departure under § 2D1.12 cmt. appl. n. 1 unreasonably amounted in effect to Alfaro's being sentenced under § 2D1.11. The district court abused its discretion by applying this methodology.

The Sentencing Commission did not cross reference § 2D1.11 in § 2D1.12 cmt. appl. n. 1 or otherwise indicate an intent for upward departures under that application note to be calculated by reference to § 2D1.11. To allow the district court's methodology would effectively subvert the Commission's designation of § 2D1.12 as the sole applicable guideline. Allowance of such methodology generally would eviscerate the effectiveness of § 1B1.2 and the Statutory Index by allowing sentencing courts to circumvent designated guidelines by analogizing to other guidelines. We decline to endorse such a result.

Finally, the district court's calculation of the upward departure violated the *ex post facto* clause. "[T]o fall within the *ex post facto* prohibition, two critical elements must be present: first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987)(internal quotation

marks and citation omitted). Although iodine was a List II chemical under 21 U.S.C. § 802(35)(1999), it was not enumerated in the Chemical Quantity Table of § 2D1.11(d) (2000). It was not added to the Chemical Quantity Table until the 2001 version of the Guidelines, effective November 1, 2001. As Alfaro committed the offense in September 2001, the first requirement of the *ex post facto* test is met: the guidelines were applied to events before their enactment.

The government objects that there was no retrospective application because, even though iodine was not listed in the 2000 version of § 2D1.11, the court could have referenced that guideline's base offense levels by determining the equivalent amount of hydriodic acid. But that method of conversion is inappropriate because it overlooks the fact that hydriodic acid is a List I chemical while iodine is a List II chemical. "List I chemicals are important to the manufacture of a controlled substance and usually become part of the final product .... List II chemicals are generally used as solvents, catalysts, and reagents." U.S.S.G. § 2D1.11 bkgd. (2000 & 2001). This distinction is more than academic. The Guidelines group the chemicals differently. *See* U.S.S.G. § 2D1.11(e) (2001); U.S.S.G. § 2D1.11(d) (2000). The top base offense level, 30, is reserved for only List I chemicals. *See* U.S.S.G. § 2D1.11(e)(1) (2001); U.S.S.G. § 2D1.11(d)(1) (2000). By converting iodine into the equivalent amount of hydriodic acid for purposes of the 2000 Guidelines, the district court effectively treated iodine as a List I chemical, thereby qualifying it for the base offense level of 30.[8]

---

**8.** That is how the district court reached its erroneous conclusion that Alfaro received a lighter sentence under the 2001 Guidelines than he would have under the 2000 Guidelines. Under the 2001 Guidelines, the base

offense level for the quantity of iodine (a List II chemical) Alfaro imported would have been 28, warranting only a 14 level upward departure. That is less than the 16 level upward departure warranted by the base level of 30

This improper treatment of iodine as a List I chemical instead of a List II chemical was to Alfaro's disadvantage. Section 2D1.11 (2000) made no mention of iodine and provided no instruction on how to sentence with respect to that chemical. As such, district courts presumably had discretion in sentencing for iodine. Yet a court's exercise of that discretion could not have resulted in a base offense level higher than the 28 mandated under the 2001 Guidelines. As noted above, the only higher base offense level, 30, was reserved for List I chemicals. Thus, under the 2000 Guidelines, the base offense level for iodine would have been less than or equal to the level mandated by the 2001 Guidelines. The 2001 Guidelines removed the discretion that existed under the 2000 Guidelines, discretion that could have resulted in only a lower or equal base offense level. A removal of discretion of this type disadvantages an offender for *ex post facto* purposes. *See Lindsey v. Washington,* 301 U.S. 397, 400, 57 S.Ct. 797, 81 L.Ed. 1182 (1937)(holding that a statute that "make[s] mandatory what was before only the maximum sentence" violates the *ex post facto* clause); *United States v. Johns,* 5 F.3d 1267, 1272 (9th Cir.1993)(holding that the loss of "a valuable opportunity to have a lower sentence imposed" violates the *ex post facto* clause); *see also Murtishaw v. Woodford,* 255 F.3d 926, 965 (9th Cir.2001)(relying on *Lindsey* and *Johns* to hold that "[t]aking discretion away from a sentencer violates the *Ex Post Facto* clause"). Thus, the second requirement for an *ex post facto* violation is also met.

The government's argument that there was no *ex post facto* violation because the 2001 amendment to § 2D1.11 was merely clarifying fails. "Under the law of our circuit, amendments to the Sentencing Guidelines which are 'clarifying' as op-

posed to 'substantive' may be given retroactive effect." *Garcia–Cruz,* 40 F.3d at 990. The 2001 amendment was substantive because it added a chemical (iodine) to the Chemical Quantity Table that was not there before. There was nothing for the amendment to clarify. *See Johns,* 5 F.3d at 1270 (rejecting the argument that "a new Guidelines section which enacts a prohibition that did not exist before can possibly be called a mere clarification").

Because the extent of the departure was unreasonable and violated the *ex post facto* clause, we vacate Alfaro's sentence.

**B. The Judge Did Not Abdicate His Judicial Role.**

■ *Alfaro contends that, by calling and examining witnesses* at the sentencing hearing, the district judge, Hon. Gordon Thompson, Jr., improperly abdicated his judicial role. We disagree. Under the Federal Rules of Evidence, "[t]he court may, on its own motion ..., call witnesses, and all parties are entitled to cross-examine witnesses thus called." Fed.R.Evid. 614(a). The court may also "interrogate witnesses, whether called by itself or by a party." Fed.R.Evid. 614(b). But "[the judge's] discretion is not arbitrary and uncontrolled." *Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). Due process requires the judge to remain "impartial and disinterested." *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). Thus, for instance, "[h]e may analyze and dissect the evidence, but he may not either distort it or add to it." *Quercia,* 289 U.S. at 470, 53 S.Ct. 698.

Alfaro fails to show that Judge Thompson was partial or interested. The judge allowed cross examination of all witnesses. Although Alfaro decries the judge for find-

(effectively treating iodine as a List I chemical) under the 2000 Guidelines.

ing the witnesses credible, he does not challenge their credibility himself. Nor does Alfaro allege that the judge distorted or added to the evidence. Importantly, Alfaro does not challenge the conversion ratios set forth by the DEA chemist or any other substantive aspect of the witnesses' testimony. In short, Alfaro does not demonstrate that the judge abandoned the "requirement of neutrality in adjudicative proceedings." *Marshall*, 446 U.S. at 242, 100 S.Ct. 1610.

C. Remand to Judge Thompson Is Appropriate.

We decline to assign this case to a different judge for resentencing as Alfaro requests. When, as here, there are no allegations of bias, we consider:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. The first two factors are of equal importance, and a finding of either one would support remand to a different judge.

*Working*, 287 F.3d at 809 (internal quotation marks and citations omitted).

██ The record does not indicate that Judge Thompson would have "substantial difficulty" in resentencing Alfaro consistent with this opinion. That Judge Thompson called and examined witnesses at the sentencing hearing provides no reason by itself to believe that he "is unlikely to disregard improper factors when fashioning a sentence for [Alfaro]" on remand. *Id.* at 810.

Nor is reassignment necessary "to preserve the appearance of justice." The judge did not act, or appear to act, improperly at the sentencing hearing when he called and examined witnesses. Alfaro complains that an appearance of injustice is given because Judge Thompson found the facts underlying the 14 level departure to have been proven by clear and convincing evidence when that evidence consisted partly of testimony from witnesses the judge himself had called.[9] Yet Alfaro did not object to the substance of that testimony. As Alfaro sets forth no reason to doubt that the clear-and-convincing standard was indeed met, there is no appearance of injustice requiring remand to a different judge.

## III. CONCLUSION

For the foregoing reasons, we vacate Alfaro's sentence. We remand to Judge Thompson for resentencing consistent with this opinion.

VACATED AND REMANDED.

---

**9.** A sentence-enhancing factor may require proof by clear and convincing evidence, rather than by a preponderance of the evidence, when the factor "has an extremely dispropor-

tionate effect on the sentence relative to the offense of conviction." *United States v. Fry*, 322 F.3d 1198, 1201 (9th Cir.2003)(internal quotation marks and citation omitted).