**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Waldo Eugene LEON, Defendant–**
**Appellee.**

No. 02–10077.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2002.

Filed Aug. 27, 2003.

---

S. Robert Lyons, AUSA, Washington, D.C., for the appellant.

Anne R. Traum, AFPD, Las Vegas, NV, for the appellee.

Before BRUNETTI, TASHIMA, Circuit Judges, and EZRA, District Judge.*

## OPINION

BRUNETTI, Circuit Judge:

Appellee Waldo Eugene Leon ("Leon") was convicted of preparing false income tax returns. At sentencing, the district court departed downward six levels based on Leon's family ties and responsibilities. Specifically, the district court relied on Leon's indispensable role in caring for his wife ("Mrs. Leon"), who recently had had her kidney removed due to renal cancer and who had been diagnosed as being at

risk of committing suicide if she were to lose her husband to death or incarceration.

The departure reduced the sentencing range from 27–33 months to 10–16 months, which in turn allowed the district court to split Leon's sentence between imprisonment and home detention. The district court sentenced Leon to 16 months, which it split between 8 months of imprisonment and 8 months of home detention. The Government challenges this downward departure. For the reasons stated in this opinion, we affirm.

## I. Background

Leon pled guilty to 32 counts of preparing false income tax returns. Leon's offense level before the departure here at issue was 17 and he was in criminal history category II. The guideline range was thus 27–33 months. U.S. Sentencing Guidelines Manual ("U.S.S.G.") ch. 5, pt. A (2001).

The district court then departed downward six levels based on the poor physical and emotional health of Mrs. Leon, her impending loss of employment, and Leon's irreplaceable role in caring for her. The six level departure brought Leon down to level 11, which resulted in a range of 10–16 months. U.S.S.G. ch. 5, pt. A. The reduced level placed Leon in Zone C, which was significant in that it enabled the district court to split Leon's sentence between imprisonment and, as a condition of supervised release, home detention. U.S.S.G. § 5C1.1(d)(2). The district court sentenced Leon at the high end of the range, 16 months, but split the sentence between 8 months of imprisonment and 8 months of home detention.

The parties extensively litigated Leon's family circumstances prior to the district

---

\* Hon. David A. Ezra, Chief United States District Judge for the District of Hawaii, sitting    by designation.

court's imposition of sentencing. The parties submitted sentencing memoranda to the court, which they each supplemented several times. Also, the court held two hearings, at the second of which both Leon and Mrs. Leon testified. Leon was finally sentenced in December 2001, a year and four months after his August 2000 conviction.

The evidence presented to the district court concerned Mrs. Leon's physical recovery, her employment situation, and her emotional state, as well as Leon's indispensable role in alleviating these problems. This evidence led the district court to conclude that this was "an exceptional and extremely unusual situation here which would take this case outside of the heartland as to family support."

It is undisputed that at the time of Leon's sentencing proceedings, his wife had recently had renal cancer, which required the removal of one of her kidneys. There was some dispute as to the prognosis of her other kidney. While recovering, Mrs. Leon has often been fatigued to the point of falling asleep unpredictably, and suffers from dizziness and nausea. She is also anemic and has a perforated ulcer and an enlarged heart. Her physical weakness impairs her ability to care for herself, and her inability to stay awake prevents her from safely driving a car. Leon was assisting Mrs. Leon with these problems by driving her to appointments and performing household chores.

At sentencing, the district court was advised that Mrs. Leon had to take a leave of absence from her full time job as a librarian because she was too weak to lift books. Although she could still work part time, the leave of absence caused her to lose her health benefits. Leon was helping financially by earning a small amount of money doing translation work.

Leon submitted evidence concerning Mrs. Leon's emotional state. Among this evidence was the report of a psychologist, Dr. Cynthia T. Morales. Also, both Leon and Mrs. Leon testified before the district court. Dr. Morales diagnosed Mrs. Leon as suffering from depression and being a high suicide risk if she were to lose her husband, due to death or incarceration, given that he is her only source of emotional support. The Government did not challenge Dr. Morales' credentials. As for her methodology, Dr. Morales reviewed several documents, such as medical records for Mrs. Leon, the pre-sentence report, sentencing memoranda from the parties, and a suicide letter from Mrs. Leon. Also, Dr. Morales evaluated the Leons together for 3.25 hours, and then individually for 1.25 hours each. The district court accepted Dr. Morales' report and conclusions and relied upon them. The Government did not present any evidence to counter Dr. Morales report, nor did it cross-examine either Leon or Mrs. Leon. Indeed, when questioned extensively at oral argument for this appeal, the Government could point to no evidence in the record that it had submitted to rebut Leon's evidence concerning Mrs. Leon's emotional health. While the Government argues that it did not have a chance to prepare a rebuttal prior to the hearing, Leon asserts, and the Government does not deny, that the Government did not seek a continuation of the second sentencing hearing in order to present such evidence. The fact that the district court had already continued the sentencing proceedings multiple times suggests that it was not in a hurry to sentence Leon and would have been fairly likely to accommodate a request from the Government for more time. The district court credited Leon's evidence by noting that Mrs. Leon's "emotional health and her stability" contributed to the exceptional nature of the case.

Leon also advised the district court that he is the only person capable of providing

Mrs. Leon the support she needs. Although the Leons have a daughter, she has left home and has psychological and behavioral problems of her own that prevent her from providing any support to Mrs. Leon. Also, the siblings of Leon and Mrs. Leon are unavailable to help because they either live out of state or do not have a relationship with Mrs. Leon such that they can be relied upon to help her. In addition to Leon himself, it appears that Mrs. Leon's only other source of support was her mother-in-law, who had passed away prior to Leon's sentencing.

## II. Discussion

█ The Government challenges the district court's six-level downward departure based on Leon's family circumstances. Under the Sentencing Guidelines, "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6 (2001). Although this factor is discouraged, it is not forbidden. *See United States v. Aguirre,* 214 F.3d 1122, 1127 (9th Cir.2000). This case thus turns on whether Leon's family circumstances were sufficiently extraordinary to justify the district court's downward departure.

### A. Standard of Review

This case was argued and submitted prior to, but decided after, the enactment of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650, 670 (2003). Section 401(d)(2) of the PROTECT Act changed the standard of review for decisions to depart from the Guidelines. *United States v. Alfaro,* 2003 WL 21638965 (9th Cir. July 14, 2003), at *2. Prior to the PROTECT Act, we reviewed the decision to depart for an abuse of discretion. *Alfaro,* 336 F.3d 876, 2003 WL 21638965, at *3; *Aguirre,* 214 F.3d at 1127(citing *Koon v. United States,* 518 U.S. 81, 98–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). Under the PROTECT Act, however, the decision to depart from the Guidelines is reviewed de novo. *Alfaro,* 336 F.3d 876, 2003 WL 21638965, at *3.

What is less clear is whether the PROTECT Act applies to cases such as this that were pending on appeal as of the PROTECT Act's effective date. Because we would reach the same result regarding the district court's departure decision under either the abuse of discretion or de novo standards of review, we leave the question of the PROTECT Act's applicability to pending cases for another day. *See Alfaro,* 336 F.3d 876, 2003 WL 21638965, at *3. Accordingly, we will assume, without so deciding, that the de novo standard of review applies to the district court's decision to depart in this case.

### B. Extraordinary Family Circumstances

█ In comparing this case to others in which the district court departed from the Guidelines based on the impact that the sentence would have on the defendant's family, we have been mindful that many such cases were decided after *Koon* but before the PROTECT Act, and would have accordingly analyzed the decision to depart for an abuse of discretion. Nonetheless, these cases form the context against which we can determine whether Leon's family circumstances are extraordinary.

█ Permissible downward departures generally involve situations where the defendant is an *irreplaceable* caretaker of children, elderly, and/or seriously ill family members, and the extent of the departure appropriately serves to protect those family members from the impacts of the defendant's prolonged incarceration. *United States v. Pereira,* 272 F.3d 76, 81–83 (1st

Cir.2001); *United States v. Faria,* 161 F.3d 761, 762 (2d Cir.1998); *see, e.g., Aguirre,* 214 F.3d at 1123–24 (affirming four-level downward departure for family circumstances, thus reducing range from 108–135 months to 70–87 months, where defendant's common law husband died during her incarceration, leaving 8–year-old son without custodial parent); *United States v. Dominguez,* 296 F.3d 192, 194, 199 (3d Cir.2002) (reversing district court's decision not to depart where district court misapprehended its authority, and stating that on remand district court could depart four levels where defendant posed no risk to society, was sole caretaker of elderly parents, father had had brain surgery and heart attack and was physically and mentally impaired, and mother had severe arthritis and heart problems). Such cases may involve defendants who take care of emotionally ill family members. *See, e.g., United States v. Haversat,* 22 F.3d 790, 797–98 (8th Cir.1994) (approving of defendant's wife's mental illness as basis for departure, but remanding due to inappropriately reduced sentence).

Conversely, downward departures that are reversed on appeal for being unwarranted often involve a non-essential caretaker. *See, e.g., United States v. Sweeting,* 213 F.3d 95, 98–102 (3d Cir.2000) (vacating twelve-level downward departure that resulted in decrease in range from 41–51 months to 6–12 months and actual sentence of 12 months in home detention, where defendant was only parent of five children, one with Tourette's Syndrome, but record did not show defendant was "so irreplaceable" as to make circumstances extraordinary); *United States v. King,* 280 F.3d 886, 888–89 (8th Cir.) (reversing downward departure from range of 108–135 months to actual sentence of 48 months based on family circumstances and father's influence in crime where defendant had significant relationship with his children and wife had advanced arthritis,

but no showing that wife could not care for children and wife's parents lived next door), *cert. denied,* 537 U.S. 965, 123 S.Ct. 402, 154 L.Ed.2d 324 (2002).

Our own pre-*Koon* cases using the de novo standard of review denied departures to defendants who had not shown that they were irreplaceable caretakers. *United States v. Miller,* 991 F.2d 552, 553 (9th Cir.1993) (two small children "would be placed at potential risk" if defendant incarcerated; no finding that defendant was irreplaceable caretaker); *United States v. Berlier,* 948 F.2d 1093, 1096 (9th Cir.1991) (defendant had made efforts to keep family together; no finding that defendant was irreplaceable caretaker). Although in *Aguirre* we simply relied on the standard of review in distinguishing these two cases, *Aguirre,* 214 F.3d at 1127 n. 3, they are nonetheless further distinguishable based on the lack of an indispensable caretaker.

In the present case, the district court did not err in its decision to depart downward based on Leon's extraordinary family circumstances. In reaching its decision, the district court properly placed special emphasis on Mrs. Leon's poor emotional and physical health and the fact that Leon is the *only* person available to tend to her needs. The district court noted that it had reviewed the psychologist's report, which indicated that Mrs. Leon would be at risk of committing suicide if she were to lose her husband due to death or incarceration. With the Leons' other family members deceased or otherwise unavailable, Mr. Leon is the sole provider of support to Mrs. Leon. The importance of such support is understandable in light of the emotionally trying experience of Mrs. Leon's recent surgery to remove her cancerous kidney and the possibility of having cancer in her other kidney. Given these facts, deciding to depart in this case was not improper. And although Mrs. Leon may

be capable of meeting her material needs without Leon's assistance, such as by continuing to work part time or availing herself of public assistance, such material assistance just further supports, albeit only slightly, the propriety of the departure decision.

Finally, we address the Government's argument that reliance on Mrs. Leon's suicidal feelings will cause virtually every defendant to claim that he or she has a family member who might commit suicide upon the defendant's incarceration. The Government relies on our decision in *United States v. Walker*, 27 F.3d 417, 418–19 (9th Cir.1994), and the Sixth Circuit's decision in *United States v. Harpst*, 949 F.2d 860, 863–64 (6th Cir.1991), to support its argument.

*Walker* and *Harpst* each involved conditions allegedly suffered by the defendant himself: post-arrest anxiety in *Walker* and suicidal tendencies in *Harpst*. As we stated in *Walker*, post-arrest anxiety suffered by a defendant does not support a downward departure because it is likely to be suffered by many criminal defendants and is therefore not extraordinary. *Walker*, 27 F.3d at 419. We also applied *Harpst*'s reasoning that a contrary rule would invite disingenuous claims of anxiety by defendants. *Id.*

But we specifically limited our holding in *Walker* to claims of post-arrest anxiety, and left open the possibility of considering preexisting mental conditions. *Id.* at 419 n. 1. This is significant vis-à-vis the present case because Mrs. Leon had been receiving treatment for depression prior to Leon's indictment. Also, the district court considered more than bare allegations of depression. It received Dr. Morales report and took testimony from the Leons themselves. Meanwhile, the Government put on no countervailing evidence and did not cross examine the Leons. Again, Mrs. Leon's circumstances are entirely understandable given that she was recovering from having her kidney removed, was at risk (even if a small risk) of having cancer in her other kidney, and had no emotional support other than her husband. We therefore have little reason to doubt that Mrs. Leon truly suffers from depression and has suicidal tendencies.

*Harpst* is further distinguishable on two additional grounds. First, the defendant had a good prognosis regarding his suicidal feelings, and did not attribute his feelings to a fear of incarceration. *Harpst*, 949 F.2d at 864. The opposite is true of Mrs. Leon. Second, as the Sixth Circuit noted, truly suicidal defendants would be entitled to appropriate medical care from the Bureau of Prisons for their condition during their incarceration. The same cannot be said of defendants' family members.

We conclude on de novo review that the district court's decision to depart was proper considering Leon's role in caring for his wife, physically, materially and emotionally. In so concluding, we rely heavily on the *uncontested* evidence in the record concerning Leon's irreplaceable role as the sole person capable of providing support, particularly emotional support, to his dependent wife who was recovering from recent cancer related surgery, had a history of preexisting depression, and was diagnosed as being a suicide risk if her husband were to be incarcerated.

We review only the district court's decision to depart and not the extent of the departure because the government does not raise or argue the extent of the departure as a separate issue.

## III. Conclusion

The district court's decision to depart downward was not improper. We therefore

AFFIRM the sentence imposed by the district court.

AFFIRMED.